1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

9

10  LISA M. TREECE,                          )
                                            ) No. CV-05-0335-MWL
11              Plaintiff,                   )
                                            ) ORDER GRANTING DEFENDANT'S
12  v.                                       ) MOTION FOR SUMMARY JUDGMENT
                                            )
13  JO ANNE B. BARNHART,                     )
    Commissioner of Social                   )
14  Security,                                )
                                            )
15              Defendant.                   )
                                            )
16  ─────────────────────────────

17      BEFORE THE COURT are cross-motions for summary judgment,

18  noted for hearing without oral argument on May 8, 2006.  (Ct. Rec.

19  11, 14).  Plaintiff Lisa M. Treece ("Plaintiff") filed a reply

20  brief on May 5, 2006.  (Ct. Rec. 16).  Attorney Maureen Rosette

21  represents Plaintiff; Special Assistant United States Attorney

22  Thomas M. Elsberry represents the Commissioner of Social Security

23  ("Commissioner").  The parties have consented to proceed before a

24  magistrate judge.  (Ct. Rec. 6).  After reviewing the

25  administrative record and the briefs filed by the parties, the

26  Court **GRANTS** Defendant's Motion for Summary Judgment (Ct. Rec. 14)

27  and **DENIES** Plaintiff's Motion for Summary Judgment (Ct. Rec. 11).

28  ///

1                           **JURISDICTION**

2        On April 5, 2002, Plaintiff applied for Supplemental Security

3  Income ("SSI") benefits alleging disability since January of 2002,

4  due to musculoskeletal pain, migraine headaches and dizziness.

5  (Administrative Record ("AR") 71-74, 80).[1]  Her application was

6  denied initially and on reconsideration.  On October 21, 2003,

7  Plaintiff appeared before Administrative Law Judge ("ALJ") Mary B.

8  Reed, at which time testimony was taken from Plaintiff,

9  Plaintiff's husband, Timmy Lee Treece, medical expert Arthur B.

10  Craig, M.D., and vocational expert K. Diane Kramer.  (AR 261-333).

11  On November 17, 2004, the ALJ issued a decision finding that

12  Plaintiff was not disabled.  (AR 23-34).  The Appeals Council

13  denied a request for review on October 8, 2005.  (AR 6-9).

14  Therefore, the ALJ's decision became the final decision of the

15  Commissioner, which is appealable to the district court pursuant

16  to 42 U.S.C. § 405(g).  Plaintiff filed this action for judicial

17  review pursuant to 42 U.S.C. § 405(g) on October 26, 2005.  (Ct.

18  Rec. 2).

19                        **STATEMENT OF FACTS**

20        The facts have been presented in the administrative hearing

21  transcript, the ALJ's decision, the briefs of both Plaintiff and

22  the Commissioner and will only be summarized here.  Plaintiff was

23  35 years old on the date of the ALJ's decision, has a high school

24  education and attended about one and one-half years of cosmetology

25  school.  (AR 24, 279-280).  Plaintiff has past relevant work as a

26  fish packer, a fish grader, a fish bin tender, a waitress and a

27
_____

28        [1]Plaintiff previously filed applications for benefits which were denied
   initially on November 3, 1993, and on November 22, 1996.  (AR 23).  The ALJ
   found no reason to reopen these prior determinations.  (AR 23).

cashier II.  (AR 24).

At the administrative hearing held on October 21, 2003, Plaintiff testified that she stands five feet tall and weighs 190 pounds.  (AR 279).  She is married and has three children, ages six, 11 and 12.  (AR (279).  She testified that she last worked in 1996 and decided to quit working so that she could stay at home and raise her children.  (AR 283-284).  She reported to smoking a half pack of cigarettes each day.  (AR 314).

Plaintiff stated that she injured her back, neck, hips and ribs in Alaska when one of her friends gave her a bear hug.  (AR 282, 285-286).  She indicated that she has suffered migraine headaches her entire life, but the cold weather and the injury from the bear hug made the migraines worse.  (AR 282).  She testified that she has migraine headaches every day and, on average, they last for days.  (AR 297).

She indicated that she has suffered pain in her left shoulder for which she needed to have surgery.  (AR 289-290).  Following surgery, she continues to have shoulder pain and is only able to lift her arm up to chest level.  (AR 290-291).  Plaintiff also indicated that she wears bilateral wrist braces at all times because she has the beginning stages of carpal tunnel syndrome.  (AR 267, 291).  She stated that her wrists are swollen at the joints and, in the cold weather, her hands swell up and she is not able to move her joints well.  (AR 267, 291-292).  As a result, she cannot write for very long, cannot open jars and has difficulty holding onto things.  (AR 291, 293).  Plaintiff indicated that her hands swell and she is not able to bend her fingers for three-quarters of the day.  (AR 294).  She stated, however, in the summertime and when she is not around cold, she

does not have as many problems with her hands. (AR 294-295). She stated that she also has problems with leg spasms (AR 288), dizzy spells that occur about six times each day (AR 298), difficulty with sleep (AR 299-300), constant diarrhea (AR 300-301), and knee pain (AR 304-305). She also indicated that she has trouble with her memory since December of 1996 and has to write down dates and numbers or she will forget them. (AR 308-309). She stated that she is allergic to wood smoke, chemical and asphalt smells trigger her migraines and halogen lights hurt her head. (AR 309).

Plaintiff testified that she is able to sit for 20 or 30 minutes before needing to stand up and move around, stand for 10 to 20 minutes, and walk about half a block. (AR 303). She indicated that she experiences pain when bending at the waist and climbing stairs. (AR 303-304). She stated that she could only lift and carry a gallon of milk or about eight pounds using both hands and indicated that she gets really tired and needs to take about two naps a day that last about one to one and one-half hours each. (AR 306-307, 312).

With regard to chores and housework, Plaintiff testified that she does a small amount of laundry and cleans the dishes if there are just a few, but that her husband helps with the grocery shopping and her children help with the housework. (AR 306). She does not drive and has never obtained a driver's license. (AR 307-308). Either her husband transports her or she will take a taxi. (AR 307). It was reported in July of 2002 that she could walk for a half-hour, stand for an hour, sit for two hours and do yard work (including pulling weeds and mowing the lawn). (AR 315-317). However, Plaintiff stated that, after her surgeries, she could no longer perform activities at this level. (AR 316-317).

Also giving testimony at the administrative hearing held on October 21, 2003, were Plaintiff's husband, Timmy Lee Treece, (AR 320-323), vocational expert K. Diane Kramer (AR 325-331), and medical expert Arthur D. Craig (AR 270-278).

## SEQUENTIAL EVALUATION PROCESS

The Social Security Act (the "Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The Act also provides that a Plaintiff shall be determined to be under a disability only if his impairments are of such severity that Plaintiff is not only unable to do his previous work but cannot, considering Plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components.  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920.  Step one determines if he is engaged in substantial gainful activities.  If he is, benefits are denied.  20 C.F.R. §§ 404.1520(b), 416.920(b).  If he is not, the decision maker proceeds to step two, which determines whether Plaintiff has a medically severe impairment or combination of impairments.  20 C.F.R. §§ 404.1520(c), 416.920(c).

If Plaintiff does not have a severe impairment or combination

of impairments, the disability claim is denied.  If the impairment is severe, the evaluation proceeds to the third step, which compares Plaintiff's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. § 404 Subpt. P App. 1.  If the impairment meets or equals one of the listed impairments, Plaintiff is conclusively presumed to be disabled.  If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents Plaintiff from performing work he has performed in the past.  If Plaintiff is able to perform his previous work, he is not disabled.  20 C.F.R. §§ 404.1520(e), 416.920(e).  If Plaintiff cannot perform this work, the fifth and final step in the process determines whether Plaintiff is able to perform other work in the national economy in view of his residual functional capacity and his age, education and past work experience.  20 C.F.R. §§ 404.1520(f), 416.920(f); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon Plaintiff to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  The initial burden is met once Plaintiff establishes that a physical or mental impairment prevents him from engaging in his previous occupation. The burden then shifts to the Commissioner to show (1) that Plaintiff can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the national economy" which Plaintiff can perform.  *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

**STANDARD OF REVIEW**

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan,* 877 F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner.

*Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

**ALJ'S FINDINGS**

The ALJ found at step one that Plaintiff has not engaged in substantial gainful activity since her alleged onset date. (AR 24). At step two, the ALJ determined that Plaintiff has the severe impairments of left shoulder impairment, gastroesophageal reflux and obesity, but that she does not have an impairment or combination of impairments listed in or medically equal to one of the Listings impairments. (AR 31). With regard to Plaintiff's impairments, the ALJ also noted as follows: Plaintiff has a past history of sinusitis, alleviated with surgery; she has been diagnosed with irritable bowel syndrome, although no gastrointestinal symptoms were reported and no evaluation was undertaken; she has complained of dizziness but the dizziness was related to her sinus condition which has been alleviated with surgery; her migraine headaches are successfully treated with medication; she has reported that she suffers from depression which is inconsistent with her ability to perform her household chores, socialize, care for her children and take vacations; her

- 8 -

complaints of low back, hip and neck pain are not supported by the evidence of record, her presentation to treating physicians, x-ray evidence, or her activities of daily living; and, she suffers from carpal tunnel syndrome, which is not severe and causes no functional limitations.  (AR 31).

The ALJ concluded that, during the relevant period, Plaintiff retained the residual functional capacity ("RFC") to preform a limited range of light exertion work or that she would be precluded from work requiring the ability to occasionally lift or carry more than 20 pounds, frequently lift or carry more than 10 pounds, reach above shoulder level with the non-dominant left upper extremity, climb ropes, ladder or scaffolds as well as crawl, engage in activities requiring exposure to extremes of temperatures or humidity or requiring more than moderate exposure to fumes or odors, and to use the left upper extremity to push or pull, below shoulder height, more than 10 pounds frequently or 20 pounds occasionally.  (AR 32-33).

At step four of the sequential evaluation process, the ALJ found that Plaintiff was able to perform her past relevant work as a cashier and as a waitress.  (AR 33).  Accordingly, the ALJ determined at step four of the sequential evaluation process that Plaintiff was not disabled within the meaning of the Social Security Act.  (AR 33-34).

### ISSUES

Plaintiff contends that the Commissioner erred as a matter of law.  Specifically, she argues that:

1.    The ALJ improperly relied on the testimony of the medical expert, Dr. Craig, over the opinions of Plaintiff's treating physician, Dr. Alcaraz, to erroneously conclude that

Plaintiff had the RFC to perform a limited range of light exertion work; and

2.    The ALJ failed to provide adequate reasons for rejecting her testimony regarding her need to take naps throughout the day.

This Court must uphold the Commissioner's determination that Plaintiff is not disabled if the Commissioner applied the proper legal standards and there is substantial evidence in the record as a whole to support the decision.

## DISCUSSION

**A.    RFC Assessment**

Plaintiff contends that the ALJ erred by finding that Plaintiff retained the RFC for a limited range of light exertion work activities.  (Ct. Rec. 12, pp. 12-16).  Plaintiff specifically asserts that the ALJ failed to provide specific and legitimate reasons for rejecting the medical opinions of treating physician Veronique T. Alcaraz, M.D., and incorrectly relied upon the testimony of the medical expert, Dr. Craig.  (Ct. Rec. 12, pp. 13-16).  Plaintiff argues that the ALJ should have credited Dr. Alcaraz' opinion that Plaintiff was permanently disabled and severely limited in the ability to walk due to arthritic, neurological or orthopaedic condition.  (Ct. Rec. 12, p. 14; AR 256).  The Commissioner responds that the ALJ properly evaluated the medical evidence of record and properly relied upon the opinion of Dr. Craig.  (Ct. Rec. 15, pp. 7-14).

The courts distinguish among the opinions of three types of physicians:  treating physicians, physicians who examine but do not treat the claimant (examining physicians) and those who neither examine nor treat the claimant (nonexamining physicians). *Lester v. Chater,* 81 F.3d 821, 839 (9th Cir. 1996).  A treating

- 10 -

physician's opinion is given special weight because of his familiarity with the claimant and her physical condition. *Fair v. Bowen,* 885 F.2d 597, 604-05 (9th Cir. 1989). Thus, more weight is given to a treating physician than an examining physician. *Lester*, 81 F.3d at 830. However, the treating physician's opinion is not "necessarily conclusive as to either a physical condition or the ultimate issue of disability." *Magallanes v. Bowen,* 881 F.2d 7474, 751 (9th Cir. 1989) (citations omitted).

The Ninth Circuit has held that "[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Lester*, 81 F.3d at 830. Rather, an ALJ's decision to reject the opinion of a treating or examining physician, may be *based in part* on the testimony of a nonexamining medical advisor. *Magallanes*, 881 F.2d at 751-55; *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995). The ALJ must also have other evidence to support the decision such as laboratory test results, contrary reports from examining physicians, and testimony from the claimant that was inconsistent with the physician's opinion. *Magallanes*, 881 F.2d at 751-52; *Andrews*, 53 F.3d 1042-43. Moreover, an ALJ may reject the testimony of an examining, but nontreating physician, in favor of a nonexamining, nontreating physician only when he gives specific, legitimate reasons for doing so, and those reasons are supported by substantial record evidence. *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995).

The ALJ examined the evidence of record, consisting of laboratory test results, reports from treating, examining and reviewing physicians, and the testimony of the medical expert, and

determined that Plaintiff has the RFC to perform a limited range of light exertion work. (AR 25-28, 32-33). In making this RFC finding, the ALJ adopted the assessment of the medical expert, Dr. Craig, finding that his assessment was consistent with the findings of the reviewing state agency physician and accurately reflected the evidence of record. (AR 32). In making her RFC determination, the ALJ also concluded that the application for a disability parking permit signed by Dr. Alcaraz, Plaintiff's treating physician, was not persuasive evidence. (AR 32).

Dr. Alcaraz noted in letters on July 18, 2002, and again on March 24, 2005,[2] that Plaintiff has musculoskeletal problems which prevent her from seeking employment. (AR 153, 259). On December 11, 2003, Dr. Alcaraz also filled out a Disabled Person's Parking Privileges Individual Application for Plaintiff. (AR 256). Dr. Alcaraz checked a box indicating that Plaintiff was permanently disabled and was severely limited in her ability to walk due to an arthritic, neurological, or orthopedic condition. (AR 256). The

---

[2]As noted by the Commissioner, the March 24, 2005 letter is post-decision evidence that was not before the ALJ, but was drafted and presented to the Appeals Council only. (Ct. Rec. 15, pp. 10-14). This court has jurisdiction to remand matters on appeal for consideration of new evidence. *Goerg v. Schweiker*, 643 F.2d 582, 584 (9th Cir. 1981); 42 U.S.C. § 405(g). Section 405(g) expressly provides for remand where new evidence is material and there is good cause for the failure to incorporate the evidence in a prior proceeding. *Burton v. Heckler*, 724 F.2d 1415, 1417 (9th Cir. 1984). To be material, the new evidence must bear directly and substantially on the matter in issue. *Key v. Heckler*, 754 F.2d 1545, 1551 (9th Cir. 1985). Also, there must be a reasonable possibility that the new evidence would have changed the outcome if it had been before the Secretary. *Booz v. Secretary of Health and Human Services*, 734 F.2d 1378, 1380-81 (9th Cir. 1984). Although the undersigned recognizes that this new evidence likely would not have changed the outcome of this case because, as indicated by Plaintiff herself, it "basically mirrored" the previous letter by Dr. Alcaraz (Ct. Rec. 12, p. 14), the Court shall consider whether the ALJ's RFC decision was supported by substantial evidence and free from legal error while reviewing the entire record, including the additional evidence of Dr. Alcaraz' March 24, 2005 letter. (AR 259). Since the Court ultimately upholds the ALJ's decision herein, considering the new evidence does not result in prejudice to either party.

ALJ considered the records of Dr. Alcaraz and specifically rejected her assessments as conclusory, unsupported by her treatment notes, and unsupported by her prescribed treatment plan. (AR 25-32). The undersigned agrees with the ALJ's analysis in this regard. Each of the letters and the disabled parking application provide no discussion of limitations. The letters and application only provide a conclusory opinion regarding Plaintiff's condition with no supporting bases for the stated conclusions therein.

The medical expert, Dr. Craig, testified at the administrative hearing that the most reliable medical report of record consisted of the rheumatologist's May 2002 evaluation. (AR 133-135, 271). At that time, Plaintiff was diagnosed with mild bilateral carpal tunnel syndrome. (AR 135, 272, 277). Dr. Craig, in concurrence with the rheumatologist's report, opined that Plaintiff's primary limitation was attributable to her left shoulder impairment. (AR 272). Dr. Craig noted that, following surgery on her left shoulder, Plaintiff had some improvement, but, because of the shoulder impairment, determined that Plaintiff would be limited to light work with the requirement of no overhead or above shoulder-height work with the left arm and the need to avoid hard pushing and pulling with the left arm. (AR 273). He further found that Plaintiff should avoid crawling or climbing ladders, but that she had no sitting, standing or walking restrictions.[3] (AR 276-277).

_____

[3]Dr. Craig noted that a recent record reflected that Plaintiff had difficulty with walking because it caused shoulder pain. (AR 276). He opined that Plaintiff likely just had a low threshold for pain, and he would not place restrictions on her ability to walk based only on its alleged effect of causing shoulder pain. (AR 277).

1    Dr. Craig questioned Plaintiff's credibility and indicated
2  that there was no abnormal findings on any physical examination
3  pertaining to her back.  (AR 272).  It was specifically noted that
4  x-rays of her lumbar spine and left hip were within normal limits.
5  (AR 273-274).  Nevertheless, he indicated that any back
6  limitations would be covered under the restriction to light work.
7  (AR 273).

8    Dr. Craig also testified that, following sinus surgery, if
9  Plaintiff had any lingering sinus problems, then she should also
10  be restricted from exposure to air pollutants and that extremes of
11  temperature and humidity may also be a problem.  (AR 274-275).
12  While there were some references in the record to migraine
13  headaches, Dr. Craig did not feel that they were particularly
14  bothersome or limiting of employment.  (AR 275).

15    The ALJ found that Dr. Craig's assessment was well-reasoned,
16  was explained in detail, was accompanied by references to the
17  evidence of record, accurately reflected the evidence of record
18  and was more persuasive.  (AR 32).  The undersigned agrees.
19  Moreover, the ALJ's RFC finding is consistent with not only the
20  medical expert's opinion, but also with the opinions of a state
21  agency reviewing physician of record.  (AR 32, 156-161).

22    On November 5, 2002, George Rodkey, M.D., reviewed the record
23  and concluded that Plaintiff was limited to occasionally lifting
24  and/or carrying 20 pounds, frequently lifting and/or carrying 10
25  pounds, sitting, standing and/or walking (with normal breaks)
26  about six hours in an eight-hour workday and occasionally reaching
27  overhead with the left upper extremity.  (AR 157).  Dr. Rodkey
28  ///

- 14 -

noted postural, manipulative and environmental limitations
consistent with the ALJ's ultimate RFC determination as well.  (AR
158-159).  He opined that Plaintiff's symptoms were somewhat
overstated and that the objective evidence did not correlate to
the level of reported limitations.  (AR 160).  Dr. Rodkey also
remarked that Dr. Alcaraz' statement that Plaintiff was prevented
from seeking employment due to her musculoskeletal problems (AR
153) was not supported by the objective evidence which shows that
Plaintiff cares for three children and maintains a household (AR
160).

    The ALJ is responsible for reviewing the evidence and
resolving conflicts or ambiguities.  *Magallanes*, 881 F.2d at 751.
If evidence supports more than one rational interpretation, the
Court must uphold the decision of the ALJ.  *Allen*, 749 F.2d at
579.  It is the role of the trier of fact, not this Court, to
resolve conflicts in evidence.  *Richardson,* 402 U.S. at 400.  The
Court thus has a limited role in determining whether the ALJ's
decision is supported by substantial evidence and may not
substitute its own judgment for that of the ALJ even if it might
justifiably have reached a different result upon de novo review.
42 U.S.C. § 405(g).  In any event, the Court finds that the ALJ
provided appropriate rationale for rejecting the conclusory
opinions of Dr. Alcaraz and properly supported her RFC finding
with credible record evidence, including the testimony of Dr.
Craig.  Accordingly, the undersigned finds that the ALJ's RFC
determination is in accord with the substantial weight of the
record evidence and free of error in this case.
///

**B.   Credibility**

     Plaintiff also argues that the ALJ erroneously determined that she was not credible. (Ct. Rec. 12, pp. 16-18).  She specifically contends that the ALJ failed to provide adequate rationale for rejecting her testimony regarding her need to take naps throughout the day. (Ct. Rec. 12, p. 16).  The Commissioner responds that the ALJ's reasoning is persuasive, supported by substantial evidence and free of legal error. (Ct. Rec. 15, pp. 14-17).

     It is the province of the ALJ to make credibility determinations.  *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995).  However, the ALJ's findings must be supported by specific cogent reasons.  *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990).  Once the claimant produces medical evidence of an underlying impairment, the ALJ may not discredit his testimony as to the severity of an impairment because it is unsupported by medical evidence.  *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (citation omitted).  Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing."  *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995).  "General findings are insufficient:  rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Lester*, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

     The ALJ considered the evidence and testimony of record and determined that Plaintiff was not credible. (AR 29).  In support of her finding in the regard, the ALJ indicated, throughout her

decision, several reasons for discrediting Plaintiff's
allegations.  (AR 25-32).  The ALJ noted the following as support
for her finding that Plaintiff was not credible:

1) On March 30, 2002, Plaintiff advised Dr. Alcaraz that she
was leaving on a two week vacation (AR 25); 2) It was noted
on May 16, 2003, that Plaintiff was the mother of three young
boys and was "very active" (AR 27); 3) On June 25, 2003 she
related that she had fallen two days before and landed on her
left shoulder, but reported in a different exhibit that she
developed recurrence of her left shoulder pain secondary to
lying in bed following sinus surgery (AR 27); 4) Plaintiff
reported experiencing dizzy spells six times a day, each
lasting for about 10 minutes, however, the medical records
reveal that she presented with complaints of dizzy spells
very infrequently, the symptoms were alleviated with the
removal of cerumen, and she had reported dizziness on only
one occasion since her sinus surgery and the symptoms did not
preclude her ability to attend a Halloween party (AR 29);
5) Plaintiff testified that she experiences constant
diarrhea, however, the record does not reflect that she
reported this symptom to any treating physician or sought
treatment for such until November of 2003 (AR 29);
6) Plaintiff alleges disability since January of 2002,
however, she testified that, prior to her shoulder surgery in
May of 2003, she was "fairly active with her kids" which is
also consistent with the May 16, 2003 report that she was
very active (AR 29); 7) Plaintiff has reported problems with
her back and hips, however, evaluations show no abnormalities
and no evidence of abnormality were shown in x-rays (AR 29);
8) Plaintiff has reported that she wears knee braces on both
knees due to pain and swelling, however, knee x-rays were
negative, and the record does not evidence that she returned
to her physician with complaints of continued knee pain or
swelling thereafter (AR 29-30); 9) Plaintiff has reported she
experiences tingling down her left arm for the past three
years, however, the record reflects that she has denied any
tingling in her arm when questioned for purposes of treatment
(AR 30); 10) With regard to her complaints of difficulty with
grasping and holding, at the time Plaintiff applied for
benefits, she did not report difficulty holding or gripping,
she did not report an inability to bend her fingers on most
days, and she was provided with wrist braces prior to nerve
conduction studies which revealed no abnormalities and has
not sought further treatment for this condition (AR 30);
11) While Plaintiff reports she experiences disabling
migraine headaches requiring her to rest all day, the record
does not reflect that her headaches are not controlled with
medication or that her headaches persisted following sinus
surgery (AR 30); 12) Plaintiff's testimony regarding her
inability to raise her left arm up to shoulder height is
inconsistent with the record evidence which shows that, in
September of 2003, she was functioning well with her
shoulder, and, when she returned with recurrence of her
shoulder pain, it was thought that the pain was acute and

- 17 -

would resolve with time, and Plaintiff did not return for further treatment or with persisting complaints thereafter (AR 30); 13) Plaintiff reported that she cannot drive because she is afraid her dizzy spells or migraines would cause an accident, however, the record reflects that Plaintiff has never obtained a driver's license (AR 30); and 14) Testimony that Plaintiff needs to take daily naps is not supported by any reports to treating physicians, request for treatment for such a condition, or by any diagnosis of record, and it is inconsistent with her activities of daily living, including reports that she was able to take vacations and attend social functions (AR 30-31).

The undersigned also finds it significant to note that Dr. Craig questioned Plaintiff's credibility (AR 272), and Dr. Rodkey opined that Plaintiff's symptoms were somewhat overstated and that the objective evidence did not correlate to the level of reported limitations (AR 160).

The ALJ documented several inconsistencies, noted a significant lack of evidence to support Plaintiff's overall allegations, noted a lack of medical treatment for Plaintiff's alleged severe limitations and indicated that her alleged symptoms were inconsistent with her activities of daily living. (AR 25-31). After reviewing the record, the undersigned judicial officer finds that the ALJ provided abundant, specific, clear and convincing reasons, supported by substantial evidence in the record, for finding Plaintiff not credible. Accordingly, the Court finds that the ALJ did not err by concluding that Plaintiff was not credible and that her statements concerning her pain, symptoms and limitations were not persuasive. (AR 31).

## **CONCLUSION**

Having reviewed the record and the ALJ's conclusions, this Court finds that the ALJ's decision is supported by substantial evidence and free of legal error. Based on the foregoing, the ///

undersigned finds that the ALJ properly determined that Plaintiff is not disabled within the meaning of the Social Security Act. Accordingly,

**IT IS ORDERED**:

1.    Plaintiff's Motion for Summary Judgment (**Ct. Rec. 11**) is **DENIED**.

2.    Defendant's Motion for Summary Judgment (**Ct. Rec. 14**) is **GRANTED**.

3.    The District Court Executive is directed to enter judgment in favor of Defendant, file this Order, provide a copy to counsel for Plaintiff and Defendant, and **CLOSE** this file.

**DATED** this ___28th___ day of July, 2006.

                        ___s/Michael W. Leavitt___
                            MICHAEL W. LEAVITT
                    UNITED STATES MAGISTRATE JUDGE